IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

|  |  |  |
|---|---|---|
| ALPS PROPERTY & CASUALTY<br>INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>v.<br><br>SHARON EDENFIELD; EDENFIELD<br>LAW, LLC; EDENFIELD & COX, P.C.<br>d/b/a EDENFIELD COX & BRUCE;<br>ALLISON PHILLIPS;<br><br>            Defendants. | | Case No. 6:21-cv-00008-RSB-CLR |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

Under claims-made policies, "coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term."[1] The ALPS Policies do not cover Allison Phillips's malpractice and other professional-liability claims against Sharon Edenfield, Edenfield Law, and Edenfield Cox, because they arose from Related Professional Services, the initial negligent or omitted act (failing to file the EEOC Lawsuit of Phillips within the statute of limitations) was discovered before the policy terms of the ALPS Policies, and the insureds failed to report that act to their prior insurer. The Policies preclude coverage, as the insureds reasonably should have known or foreseen that their error in missing the statute of limitations might be the basis of a claim. Courts have repeatedly ruled that attorneys,

---

[1] *Serrmi Prod., Inc. v. Ins. Co. of Pa.*, 201 Ga. App. 414, 414, 411 S.E.2d 305, 307 (1991) (citation omitted).

as a matter of law, should have known known or foreseen that missing a statute of limitations could be the basis of a claim, and the Court should do so here.

I.   **No coverage exists under the Policies issued to Edenfield Law.**

Before ALPS issued the Policies, Sharon Edenfield knew that she had failed to file her client Phillips's EEOC Lawsuit within the statute of limitations. Accordingly, the ALPS Policies do not cover Ms. Edenfield or Edenfield Law for the claims of Phillips for at least six reasons:

(1) Sharon Edenfield and Edenfield Law failed to disclose that Ms. Edenfield missed the statute of limitations in their insurance applications:[2]   The applications called for information concerning "any fact, circumstance, act, error, or omission that could reasonably be expected to be the basis of a claim against any current or former Attorney in the Firm,"[3] which would include Ms. Edenfield's representation of Phillips with respect to her employment claims against David Emanuel Academy and missing the statute of limitations. The insureds agreed that "any claim arising from or in connection with any claim, suit, fact, event, circumstance, act, error, or omission … that should have been disclosed in … this application will be excluded from coverage under the policy."[4] Because Phillips's claims against Ms. Edenfield and

---

[2] April 2019 application [Doc. 78-7]; Renewal Application [Doc. 44-16]. *See also* ALPS Policies at Declarations [Docs. 44-13/44-15, p. 3; Docs. 44-9/44-11, p. 2] ("All current and previously submitted application forms delivered to [ALPS] are made a part of the Policy."; ), § 6(K) [Doc. 44-13, p. 47; Doc. 44-15, p. 38; Docs. 44-9/44-11, p. 49] ("each **Insured** agrees … that the statements, information and representations … in the application for this **Policy**, and in the application for each prior policy issued by [ALPS] to the Insured, are true and correct [and] that the **Declarations** and the application form a part of this **Policy** ….").

[3] April 2019 application [Doc. 78-7], p. 3, § 4.

[4] *Id.* at bottom of p. 3.

Edenfield Law arose from pre-policy facts and circumstances that could reasonably be expected to be the basis of a claim, coverage is excluded.

(2) <u>The unfulfilled condition for coverage in Section 1(A)(2)</u> required that "no Insured knew or reasonably should have known or foreseen that the **Wrongful Act** might be the basis of a **Claim**,"[5] but Ms. Edenfield knew or reasonably should have known or foreseen that missing the statute might be the basis of a claim.

(3) <u>The unfulfilled condition for coverage in Section 1(A)(3)</u> required that notice of "the **Wrongful Act** was not given nor required to be given to any other insurer,"[6] but notice of the missed statute of limitations (a Wrongful Act) was required to be given to Lloyd's under the Lloyd's Policies. The Lloyd's Policies provide that, if an insured becomes aware of an Incident during the Lloyd's policy period, the insured must report the Incident to Lloyd's in writing as soon as possible.[7] Missing the statute constituted an Incident, i.e., an error which Ms. Edenfield reasonably could expect to be the basis of a covered claim.[8] During the Lloyd's policy period, Ms. Edenfield became aware that she had missed the statute of limitations and that the Court dismissed the lawsuit due to that error and was therefore required to notify Lloyd's of her error.

---

[5] *See* §1(A)(2) of ALPS Policies [Doc. 44-13, p. 28; Doc. 44-15, p. 19; Docs. 44-9/44-11, p. 30].

[6] *Id. See also* § 2(DD) of ALPS Policies [Doc. 44-13, p. 35; Doc. 44-15, p. 26; Docs. 44-9/44-11, p. 37] (defining "Wrongful Act" as an "[a]ct, error or omission in **Professional Services** that were or should have been rendered by the **Insured**").

[7] *See* § V of the Lloyd's Policies [Docs. 77-2,77-3/77-4, p. 13].

[8] *See* § III(14) of the Lloyd's Policies [Docs. 77-2/77-3/77-4, p. 11] (defining "Incident" as a "circumstance, act, error or omission which an **Insured** reasonably could expect to be the basis of a **Claim** or **Suit** covered by this Insurance Policy.").

(4) <u>The exclusion found in Section 3(E)(2)</u> bars coverage for "any claim arising from or in connection with" a pre-policy Wrongful Act, if there "is an earlier-incepting policy of professional liability insurance that … would have provided coverage for the **Claim** if the **Insured's** obligations under that policy had been complied with …."[9] As shown above, the Lloyd's Policies required Ms. Edenfield to report her error in missing the statute of limitation to Lloyd's, but she failed to comply with her obligations under those policies. Section 3(E)(2) therefore bars coverage.

The insureds argue that the Lloyd's Policies would not have provided coverage for the claims against them, because Phillips did not assert her professional-liability claims during the Lloyd's policy period. But those policies provide that claims arising from Incidents reported during the Lloyd's policy period "will be deemed, for purpose of this insurance to have been made at the time that the **Incident** is reported in writing to [Lloyd's]"[10] and treat all of Phillips's claims arising from the insureds' alleged mishandling of the employment claims as a single claim.[11] The Lloyd's Policies therefore would have covered all of the professional-liability claims and treated them as a single claim made during the Lloyds' policy period, if the insureds had complied with their obligations to report the missed statute to Lloyd's.

---

[9] *See* § 3(E)(2) [Doc. 44-13, p. 35; Doc. 44-15, p. 26; Docs. 44-9/44-11, p. 37].

[10] *See* §§ I(A)(1) and V of the Lloyd's Policies [Docs. 77-2/77-3/77-4, pp. 6, 13] (providing coverage for damages "caused by a negligent act, error or omission in **Professional Services** provided by an **Insured**"). *See also* § I(E)(1)(c-d) (identifying Edenfield Cox's employees as insureds), p. 26 (providing that coverage is provided to Sharon Edenfield, among others).

[11] *See* § II(C) of the Lloyd's Policies [Docs. 77-2/77-3/77-4, p. 9] ("Two or more **Claims** arising out of … a series of related acts, errors or omissions in **Professional Services** … shall be treated as a single **Claim**.")

(5) <u>The exclusion in Section 3(E)(3)</u> also bars coverage of the professional-liability claims. It excludes coverage if any Insured "should have given to any insurer, notice of a … potential **Claim** arising from or in connections with the **Wrongful Act**, or from any **Wrongful Act** that is connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decisions to the …. potential **Claim**,"[12] and the insureds should have given Lloyd's notice of a potential claim arising from her missing the statute of limitation.[13]

The insureds argue that the exclusion in Section 3(E)(3) does not apply, as there was no "Claim" prior to June 16, 2020.[14] But the exclusion does not require an actual claim and is triggered if the insured should have given notice of a "*potential* **Claim** arising from or in connection with the **Wrongful Act**."[15] Given the dismissal of her client's EEOC Lawsuit as a result of Ms. Edenfield missing the statute of limitations, Ms. Edenfield should have known that a claim could result and was required to give notice of that potential claim to Lloyd's.

(6) <u>The unfulfilled condition for coverage in Section 6(B)(1)</u>: The insureds failed to immediately give ALPS written notice of the missed statute of limitations, breaching this policy condition, precluding coverage.[16]

---

[12] *See* § 3(E)(3) [Doc. 44-13, pp. 35-36; Doc. 44-15, pp. 26-27; Docs. 44-9/44-11, pp. 37-38].

[13] *See* footnotes 7-8 and accompanying text, above.

[14] *See Sharon Edenfield and Edenfield Law, LLC's response to ALPS's motion for summary judgment and ALPS's brief* [Doc. 85], pp. 14-15 (Ms. Edenfield and Edenfield Law incorrectly refer to that exclusion as § 1(A)(3) of the policies, when it is actually found at § 3(E)(3)).

[15] Docs. 44-9/44-11, p. 39 (emphasis added).

[16] *See* § 6(B)(1) [Doc. 44-13, p. 45; Doc. 44-15, p. 36; Docs. 44-9/44-11, p. 47] ("When an **Insured** becomes aware of a **Wrongful Act** that could reasonably be expected to be the basis

## II.    Ms. Edenfield, as a matter of law, should have known that missing the statute of limitations could be the basis of a claim.

Ms. Edenfield claims that she "did not believe that the dismissal of the employment discrimination lawsuit could or would become a claim that needed to be reported to ALPS," because she purportedly recommended that Ms. Phillips pursue her workers' compensation suit only and not her employment discrimination claims and Phillips purportedly agreed.[17] This purported agreement was made after Ms. Edenfield had already missed the statute of limitations, after Davis Emanuel Academy had moved to dismiss the EEOC Lawsuit based on the statute of limitations, and without Ms. Edenfield recommending that Phillips confer with independent counsel. It does not show that Ms. Edenfield could not have expected the missed statute of limitations to be the basis of a claim. Ms. Edenfield's self-serving testimony that Phillips agreed to Ms. Edenfield's recommendation to not pursue her remaining employment discrimination claims does not create any genuine issue or material fact or preclude summary judgment.

In *Abood v. Gulf Group Lloyds*, 2008 WL 2641310 (W. D. Pa. 2008), the insured attorneys failed to file their client's complaint for personal injuries before the statute of limitations expired and informed the client of that failure, who indicated that she

---

of a **Claim**, but no **Claim** arising therefrom has yet been made, then as a condition precedent to [ALPS's] obligation to defend or indemnify the Insured under this **Policy**, the **Insured** shall immediately give written notice to [ALPS].").

[17] *Aff. of V. Sharon Edenfield* [Doc. 85-2], ¶¶ 10-11. Contrary to Edenfield Cox's brief [Doc. 83, p. 3], Ms. Edenfield did not testify that she "determined that evidence did not exist to prove unlawful discrimination. Instead, she testified that she was unable to find evidence to substantiate the § 1981 claims she was considering adding to the EEOC Lawsuit by amendment, not the EEOC Claims. *Dep. of V. Sharon Edenfield* [Doc. 78], pp. 36-37.

would not pursue a malpractice claim because she could still pursue underinsured motorist benefits. The court held that the attorneys could have anticipated a claim based on missing the statute of limitations as a matter of law, even though the client indicated that she would not take legal action regarding the error, as the attorneys knew of their error, and a reasonable attorney in their position would have known that a lawsuit was possible.[18] The attorneys' "subjective belief that they would not be sued has no bearing on the analysis of whether or not they should have reasonably expected to be sued."[19] Similarly, Ms. Edenfield knew of her error, and a reasonable person in her position would have known that a claim was possible.

In determining whether an insured could reasonably expect an error or omission to be the basis of a claim, courts are "not required to measure the reasonableness of any expectation (or lack thereof) of being sued" but must determine whether the insured "was aware of the circumstances creating a basis to anticipate a claim."[20] Ms. Edenfield was aware of those circumstances here: the dismissal of her client's EEOC Lawsuit due to Ms. Edenfield's failure to file the lawsuit within the statute of limitations. Her purported belief that Phillips would not bring a malpractice claim does not alter the fact that Ms. Edenfield could have expected her error to be the basis of a claim. "Although an attorney's actual knowledge of the facts

---

[18] *Abood v. Gulf Group Lloyds*, 2008 WL 2641310, at *9 (W. D. Pa. 2008).

[19] *Id.* (citation omitted). *See also Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 2006 U.S. Dist. LEXIS 31329, at *4 (S.D.N.Y. Mar. 3, 2005) (holding that attorney "would know or could reasonably foresee that failing to file a claim … within the statute of limitations might give rise to a malpractice claim.")

[20] *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 2012 WL 443957, at *13 (N.D. Ind. 2012), *aff'd*, 712 F.3d 336 (7th Cir. 2013).

is relevant to whether a reasonable attorney with that knowledge would have expected a claim, the attorney's subjective belief about the import of those facts is not."[21] Courts distinguish between the facts known to an attorney, which, "when viewed by a reasonable person, could give rise to a claim of malpractice, and impressions which lead the attorney to believe that the client will not pursue a claim for malpractice."[22] Pre-policy knowledge of circumstances that an insured could reasonably expect to be the basis of a claim bars coverage, even if no suit had been filed and no claim had been made.[23]

Defendants argue that whether an insured could reasonably expect an error or omission to be the basis of a claim is generally a question for the jury. But courts in Georgia have frequently held that such questions can be resolved as a matter of law.[24] Other courts have recognized that where an attorney error leads "to dismissal of a client's claims, courts may enter summary judgment on the issue of reasonable expectation of a claim."[25] Although Ms. Edenfield has cited cases in which the

---

[21] *Id.* at *12.

[22] *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073, 1079-80 (W.D. Pa. 1997) ("Any dispute over whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client would make a claim is not relevant to our analysis."), *aff'd*, 149 F.3d 1165 (3d Cir. 1998). *See also Ross v. Continental Cas. Co.*, 480 B.R. 43, 55 (D.D.C. 2009) ("In establishing prior knowledge, there is no requirement that the client complain ahead of time or indicate that it will file a claim against the insured."), *aff'd*, 393 F. App'x 726 (D.C. Cir. 2010).

[23] *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 224 (5th Cir. 1986).

[24] *Equitable Life Assur. Soc. of U.S. v. Studenic*, 77 F.3d 412, 415-16 (11th Cir. 1996) (citing cases); *Hartford Cas. Ins. Co. v. Robert P. Copeland, P.C.*, 2010 WL 11479286 at *7 n.6 (N.D. Ga. 2010) (determination of foreseeability of claim arising from known circumstances "is an appropriate one to make, as a matter of law, at the summary judgment stage.").

[25] *ALPS Property & Casualty Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 816 (D. Nev. 2021). *See also Westport Ins. Corp. v. Jacobs & Barbone, P.A.*, 2009 WL 922023

circumstances did not warrant judgment as a matter of law (as reasonable jurors could differ as to whether the insured could have reasonably expected a claim to arise in those cases), none of those cases involved an attorney missing a statute of limitations.[26] In contrast, courts have consistently held that an attorney who misses a statute of limitations is on notice of a potential malpractice claim as a matter of law.[27]

In *Home Indemnity Co. Manchester, New Hampshire v. Toombs*, 910 F. Supp. 1569 (N.D. Ga. 1995), an attorney missed a statute of limitations, resulting in the dismissal of his client's claims in 1992, and applied for professional malpractice

---

(D.N.J. Mar. 31, 2009) (as a matter of law, attorney could expect a malpractice claim where attorney failed to file summons, resulting in dismissal of suit); *Abood v. Gulf Group Lloyds*, 2008 WL 2641310, at *9 (W.D. Pa. 2008) (holding attorney could have reasonably foreseen that missing statute of limitations could result in malpractice claim).

[26] Defendants cite *Joseph v. Certain Underwriters at Lloyd's London*, 356 Ga. App. 178, 186, 844 S.E.2d 852, 858 (2020), in which the court held that whether the insured attorneys reasonably expected a malpractice claim by one former client (Moody) was a question for the jury, given the circumstances of that case (which did not involve the dismissal of any lawsuit due to an attorney error). But the court held that the insureds could have reasonably expected a claim from another individual who claimed to be the attorneys' client (Miller), showing that the issue of whether an insured could have anticipated a claim can properly be decided as a matter of law.

[27] *Home Indem. Co. Manchester, N.H. v. Toombs*, 910 F. Supp. 1569, 1580-81 (N.D. Ga. 1995) (holding, as a matter of law, that insured had a reasonable basis to believe that he could be sued for missing statute of limitations); *ALPS Property & Casualty Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 815 (D. Nev. 2021) ("mistake fatal to a client's case puts a reasonable lawyer on notice they may face a malpractice claim."); *Chicago Ins. Co. v. Paulson & Nace, PLLC*, 37 F. Supp. 3d 281 (D.D.C. 2014) (where a claim is barred by the statute of limitations, a reasonable attorney would, as a matter of law, expect that a claim may result); *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler, LLP*, 793 F. Supp. 2d 399 (D.D.C. 2011) ("the dismissal of a lawsuit because of attorney error would clearly put a lawyer on notice of the possibility of a malpractice claim."); *Darwin Nat'l Assurance Co. v. Matthews & Megna LLC*, 36 F. Supp. 3d 636 (D.S.C. 2014) ("an 'incident' such as an attorney missing a statute of limitations for his client, is the type of 'incident' that a reasonable attorney … would be required to disclose"); *Pelagatti v. Minnesota Lawyers Mut. Ins. Co.*, 2013 WL 3213796, at **7-8 (E.D. Penn. 2013) ("A reasonable attorney would believe that failure to comply with a statute of limitations could be grounds for a legal malpractice claim" despite attorney's contention that client indicated she had no intention of suing the attorney)."

insurance in 1993, failing to disclose the error in his initial and renewal applications.[28] His client sued the attorney for malpractice in 1994.[29] The policy provided that claims would be covered only if the insured "had no reasonable basis to believe that the insured had breached a fiduciary duty or to foresee that a claim would be made against the insured."[30] The court granted summary judgment to the insurer in the insurer's declaratory-judgment action, concluding, as a matter of law, that the attorney had a reasonable basis to believe that he could be sued as a result of missing the statute of limitations.[31]

An insurer also obtained summary judgment under a claims-made policy in *Hartford Casualty Insurance Co. v. Robert P. Copeland, P.C.*, 2010 WL 11479286 (N.D. Ga. 2010). Before obtaining the policy, the insured (a closing attorney) had signed a form that required him to inform the lender of any concurrent or subsequent transfers of the property prior to closing.[32] During the policy period, he received a letter from the lender, stating that he had failed to comply and neglected to advise the lender of two sales of the property he had facilitated on the day of the closing.[33] The lender later sued the insured for malpractice, negligence, and breach of fiduciary duty.[34]

---

[28] *Home Indem. Co. Manchester, N.H. v. Toombs*, 910 F. Supp. 1569, 1571-72 (N.D. Ga. 1995).
[29] *Id.* at 1572.
[30] *Id.* at 1580.
[31] *Id.* at 1580-81.
[32] *Hartford Cas. Ins. Co. v. Robert P. Copeland, P.C.*, 2010 WL 11479286, at *1 (N.D. Ga. 2010).
[33] *Id.* at *2.
[34] *Id.* at *3.

Hartford argued that the policy did not cover the claim, as the condition that no insured "knew or could have foreseen" that a pre-policy act could result in a claim had not been satisfied.[35] The court noted that it only had to ask if the insured "either knew or could have foreseen" that its act "could result in a future claim being asserted against it."[36] Because the insured was subjectively aware of the acts upon which the claim was based (his failure to comply with the closing instructions that he signed), and because the insured, "as well as any reasonable professional in their positions, could have foreseen a claim resulting from those acts, errors, and omissions," the claim was not covered, even though the Insured did not receive the lender's letter or lawsuit until after the Policy's effective date.

Here, prior to the issuance of the ALPS Policies, Ms. Edenfield knew that she had failed to file the EEOC Lawsuit within the statute of limitations and that the Court had dismissed the lawsuit with prejudice as a result. Ms. Edenfield (as well as any reasonable professional in her position) could reasonably expect that a claim could arise from missing the statute of limitations as a matter of law. Her failure to disclose her error on her insurance applications, the unsatisfied conditions for coverage under Section 1(A)(2) and (3) in the ALPS Policies, the exclusions in Section 3(E)(2) and (3), and her failure to immediately notify ALPS of the Wrongful Act under Section 6(B)(1) preclude coverage.

---

[35] *Id.* at *2.
[36] *Id.* at *6.

### III.   No coverage exists under the Policies issued to Edenfield Cox.

Edenfield Cox argues that it was not required to disclose the missed statute of limitations in its insurance applications, because Sharon Edenfield was not an employee of Edenfield Cox or otherwise an insured under the ALPS Policies issued to Edenfield Cox. But that issue is not determinative, as the Policies preclude coverage regardless of whether Ms. Edenfield was an insured under the ALPS Policies issued to Edenfield Cox.[37]

For example, under the condition in Section 1(A)(3), the ALPS Policies only provide coverage if notice of "the **Wrongful Act** was not … required to be given to any other insurer."[38] Notice of the missed statute of limitations was required to be

---

[37] Contrary to Edenfield Cox's assertion that the duty to indemnify is not ripe for adjudication when the insured has not yet been held liable in an underlying lawsuit [Doc. 83, p. 6 n.9], the Supreme Court has held that a judgment against the insured is not a prerequisite for a declaratory judgment that an insurer has no duty to defend or indemnify. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 274 (1941) (declaratory judgment on duty to indemnify was permissible, despite the absence of any judgment in the injured party's favor). *See also First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, 648 F. App'x 861 (11th Cir. 2016) (possibility that insured's liability would never arise was not a sufficient basis for a district court to decline to exercise jurisdiction over a declaratory judgment action); *BITCO General Ins. Corp. v. Kelluem*, 2017 WL 5244803, at *2, 4 (S.D. Ga. 2017) ("even if the maturation of the controversy depends on future contingencies, courts still have discretion to entertain declaratory judgment actions," and "even if declaratory relief . . . hinges on liability that may never actually arise, the Court still has discretion to entertain the present action."); *Grange Mut. Cas. Co. v. Dasher*, 2013 WL 85244, at *4 (S.D. Ga. 2013) ("Even absent a judgment as to the liability of Defendants, the dispute over Grange's duty to indemnify constitutes an actual controversy for purposes of declaratory relief."); *James River Ins. Co. v. Maier*, 795 F. Supp. 2d 1378, 1380 (S.D. Ga. 2011) (employing discretion to rule on insurer's coverage obligations, even in the absence of a judgment against the insured); *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 579, 649 S.E.2d 740, 747 (2007) ("the propriety of deciding both a duty to defend and to indemnify in the same declaratory judgment action is well established.")

[38] *See* § 1(A)(3) [Docs. 44-9/44-11, p. 30].

given to Lloyd's (Edenfield Cox's prior insurer) under the Lloyd's Policies.[39] Even if Ms. Edenfield was not insured under the ALPS Policies issued to Edenfield Cox, she was an insured under the Lloyd's Policies and was required to notify Lloyd's of the missed statute of limitations, which constituted a Wrongful Act by Ms. Edenfield and her firm (Edenfield Cox). Because notice of the Wrongful Act was required to be given to Edenfield Cox's prior insurer, the condition in Section 1(A)(3) is not satisfied, precluding coverage for the professional-liability claims of Phillips.

Similarly, under the exclusion in Section 3(E)(2), there is no coverage if the Lloyd's Policies "would have provided coverage for the **Claim** if the **Insured's** obligation under the policy had been complied with …."[40] Edenfield Cox and Ms. Edenfield were required to report that she had missed the statute of limitations to Lloyd's under the Lloyd's Policies, and any subsequent claims made against Ms. Edenfield and/or Edenfield Cox arising from the mishandling of the employment claims would be deemed made at the time the incident was reported to Lloyd's.[41] Therefore, that exclusion bars coverage, regardless of whether Sharon Edenfield was an insured under the ALPS Policies issued to Edenfield Cox.

Coverage is also barred by the unfulfilled condition for coverage in Section 1(A)(2), the exclusion in Section 3(E)(3), and Edenfield Cox's failures to disclose the circumstances of the missed statute in their insurance applications or to otherwise

---

[39] *See* § V of the Lloyd's Policies [Docs. 77-2,77-3/77-4, p. 13] ("If during the **Policy Period**, an **Insured** first becomes aware of any **Incident**, the **Insured** must: 1. Report the **Incident** to [Lloyd's] in writing … as soon as possible ….").

[40] *See* § 3(E)(2) [Docs. 44-9/44-11, p. 37].

[41] See footnotes 7-8, 10-11 and accompanying text, above.

provide ALPS with written notice of a potential claim,[42] as Edenfield Cox had both actual and constructive notice of the missed statute of limitation. Gerald Edenfield (an insured under the ALPS Policies issued to Edenfield Cox)[43] received Notices of Electronic Filing related to the motion to dismiss based on the statute of limitations.[44] Those notices constituted notice of the missed statute of limitations to Edenfield Cox and a potential professional-liability claim. Furthermore, Sharon Edenfield had pre-policy knowledge of the missed statute of limitations, which is imputed to Edenfield Cox, as she was Edenfield Cox's employee when she learned that she had missed the statute.[45]

"Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the

---

[42] *See* footnotes 2-5, 12-16, and accompanying text, above.

[43] *See* ALPS Policies [Docs. 44-9 and 44-11], pp. 2-3, 5 (identifying Gerald Edenfield as an insured attorney), 34 (§ 2(Q)(1)); *Dep. of Edenfield Cox* [Doc. 77], pp. 28-29 (identifying Gerald Edenfield as equity partner in the firm, continuously between 2015 and Sept. 2, 2021)

[44] May 3, 2017 Notice of Electronic Filing for Response to Motion to Dismiss [Doc. 77-12]; (showing notice was sent to gerald@ecbcpc.com); *Dep. of Edenfield Cox* [Doc. 77], pp. 32-33 (agreeing that Gerald Edenfield received notice of that filing); Dep of Sharon Edenfield [Doc. 78], pp. 53-55 (testifying that Gerald Edenfield received efiling notices for her cases).

[45] *See, e.g., Chaucer Corp. Cap. (No. 2) Limited v. Norman W. Paschall Co.*, 2011 WL 13136603, at *3 (N.D. Ga. Sept. 27, 2011) (under Georgia law, "it is elementary that the knowledge of employees or agents acting within the scope of their authority is attributable to the employer or principal." (quoting *City of Marietta v. Godwin*, 106 Ga. App. 113, 117, 126 S.E.2d 302, 304 (1962)); "Acting in the scope of authority means simply that the employee is doing something for the benefit of the company."); OCGA § 10-6-58 ("Notice to the agent of any matter connected with his agency shall be notice to the principal."); OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him."). Sharon Edenfield signed the retainer agreements with Allison Phillips [Docs. 44-5, 49-1] and multiple court filings on behalf of Edenfield Cox, showing that she was acting for the benefit of Edenfield Cox. [Docs. 49-2, 78-16].

rights of the parties."[46] Edenfield Cox's purported ignorance of a potential claim is immaterial, as it had notice of the missed statute of limitations but did not exercise due diligence to evaluate whether a claim might result. "An insured cannot be heard to say it did not know when it did not inquire. The insured must use due diligence and take appropriate steps to make an informed judgment ...."[47] Because reasonable attorneys in the position of Edenfield Cox and Gerald Edenfield could foresee that the missed statute of limitations could be the basis of a claim, there is no coverage for the professional-liability claims as a matter of law.

## IV.   All of the claims arise from Related Professional Services.

The Defendants have argued that, even if Phillips's professional-liability claims tied to her discrimination claims are not covered, the portion of their claims tied to the workers' compensation claim ("WC claim") are covered.[48] Because all of Phillips's claims against the insureds arise from Related Professional Services (handling claims related to Phillips's employment with David Emanuel Academy), those claims are treated as a single claim under the ALPS Policies. The conditions for coverage were not satisfied, because the insureds reasonably should have known or foreseen that missing the statute of limitations might be the basis of a claim (contrary to Section 1(A)(2)), and because notice of the error was required to be given to Lloyd's

---

[46] OCGA § 23-1-17.

[47] *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F.3d 852, 861 (11th Cir. 1997). *See also Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga. App. 714, 719, 209 S.E.2d 6, 9 (1974) (notice must be given "with reasonable diligence")

[48] In her complaint [Doc. 44-23], Phillips asserts claims for legal malpractice, breach of fiduciary duty, breach of contract, liability for the acts of others, negligent misrepresentation, punitive damages, and attorney's fees and expenses, all based on the insureds' purported mishandling of her discrimination and WC claims.

(contrary to Section 1(A)(3)). Those unfulfilled conditions and the exclusions discussed above preclude coverage for all of Phillips's professional-liability claims, as the Policies require them to be treated as a single claim.

Under subsection D ("MULTIPLE CLAIMS, CLAIMANTS OR INSUREDS") of Section 4 ("DEDUCTIBLE, CLAIMS EXPENSE ALLOWANCE, LIMIT OF LIABILITY AND MULTIPLE CLAIMS"), the ALPS Policies provide:

> All **Claims** that arise out of or in connection with the same **Professional Services** or **Related Professional Services**, whenever made and without regard to the number of Claims, claimants or implicated **Insureds** shall be treated as a single **Claim**.[49]

The headings of Section 4 and subsection D show that those provisions govern the treatment of "Multiple Claims." The Defendants contend that this language does not apply to coverage under the insuring agreement in Section 1. Section 1, however, expressly states that the coverage being provided is "[s]ubject to the **Limit of Liability**, exclusions, conditions and other terms of this Policy,"[50] Therefore, the Policies' terms concerning the treatment of multiple claims in Section 4(D) apply to Section 1.[51]

Courts "may not strain the construction of the policy so as to discover an ambiguity"[52] and must not "call forth doubt or make hypercritical constructions" but

---

[49] *See* § 4 (D) [Docs. 44-9/44-11, p. 40; Doc. 44-13, p. 38; Doc. 44-15, p. 29].

[50] *See* § 1 (A) [Docs. 44-9, 44-11, p. 30; Doc. 44-13, p. 28; Doc. 44-15, p. 19].

[51] The fact that the "Multiple Claims" provision is included in Section 4 rather than Section I does not alter its meaning or mean that it does not apply to determining what claims are covered. Just as the limit of liability and deductible provisions in Section 4 restrict the coverage provided under Section I, Subsection D restricts that coverage when there are multiple claims.

[52] *State Farm Mut. Auto Ins. Co. v. Staton*, 286 Ga. 23, 25, 685 S.E.2d 263, 265-66 (2009) (citation omitted).

must apply the "natural, obvious meaning . . . over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover" and must reasonably construe the policy "in its entirety" and "not beyond that fairly intended within its terms."[53]

The Policies define "Related Professional Services" as:

> **Professional Services** that are connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision including, but not necessarily limited to, work that is a part of the same or continuing **Professional Services**.[54]

The Policies define "Professional Services" to include services or activities performed as an attorney on behalf of a client.[55]

All of the professional-liability claims of Phillips arose out of or in connection with Related Professional Services, as they all arose out of the insureds' services and activities performed on behalf of Phillips, which were connected temporally, logically or causally by several common facts, circumstances, situations, and events. To result in multiple claims being treated as a single claim, the Professional Services "may be connected in any of the three ways, or any combination."[56]

The Professional Services provided to Phillips with respect to her discrimination and workers' compensation claims were connected temporally, i.e.,

---

[53] *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869, 578 S.E.2d 470, 472 (2003) (citations omitted).

[54] *See* § 2 (BB) [Docs. 44-9/44-11, p.37; Doc. 44-13, p. 35; Doc. 44-15, p. 26].

[55] *See* § 2 (Y) [Doc. 44-9/44-11, p. 36; Doc. 44-13, p. 34; Doc. 44-15, p. 25].

[56] *ALPS Prop. & Cas. Ins. Co. v. Bowles Rice, LLP*, 2018 WL 3639832, at *11 (N.D.W.V. 2018) (citation omitted).

"connected to a particular time or through the sequence of time."[57] Ms. Edenfield represented Phillips concerning both claims at the same time, discussed them with her during the same meetings, and continued to represent Phillips for the WC claims after the Court dismissed the EEOC Lawsuit.[58] The initial representation agreement provided that Phillips was retaining Edenfield Cox to represent her in connection with her claims for damages for unlawful actions taken against her in the course of her employment with David Emanuel Academy, which included her discrimination and WC claims.[59] The professional-liability claims all arose out of or inconnection with the legal services provided for claims arising from Phillips's employment with the David Emanuel Academy and were primarily based on events occurring during the 2015-2016 school year.[60]

The Professional Services were also "causally connected," as Ms. Edenfield's professional services for the discrimination claim brought about her professional

---

[57] *Id.* ("In other words, for two things to be temporally connected, they must either occur at the same time or one must follow the other sequentially, that is, in a continuous or connected series.") (citation omitted).

[58] *Aff. of V. Sharon Edenfield* [Doc. 85-2], ¶¶ 6, 7-10 (describing conversations where both claims were discussed and continued pursuit of the WC claim); *Dep. of V. Sharon Edenfield* [Doc. 78], pp. 46-47 (Ms. Edenfield discussed both claims during a Dec. 2016 meeting).

[59] *See* Representation Agreement [Doc. 44-5], p. 1. The WC claim was based on a student at David Emanuel Academy body-slamming Phillips into the floor, injuring her left arm and right leg, during a physical education class. *See* Phillips *Complaint* [Doc. 44-23], ¶¶ 49-51, 70-73. Although Phillips later signed a separate Employment Contract with Edenfield Cox related to the WC claim for a different contingent fee [Doc. 49-1], the WC Claim was within the scope of the services she retained Edenfield Cox to provide in the initial Representation Agreement.

[60] *See* Phillips *Complaint* [Doc. 44-23], ¶¶ 25-51.

services for the WC claim.[61] Ms. Edenfield testified that she provided legal representation and legal services for the WC claim as a result of discussions during a December 8, 2016 meeting, when Phillips asked her when she would receive money for her discrimination claims, they discussed the work injuries, and Ms. Edenfield agreed to handle the WC claim.[62] Therefore, the Professional Services related to the WC Claim flowed from and were brought about by the services provided for the discrimination claims.

The services were also "logically connected," as they were "connected by an inevitable or predictable interrelation or sequence of events."[63] It was predictable that Ms. Edenfield would provide Professional Services related to the WC claims, after her firm had agreed to represent Phillips with respect to her claims against David Emanual Academy and she and Phillips discussed the workplace injuries during a meeting about the discrimination claims.

Despite the Policies' broad definition of "Related Professional Services," the Defendants argue that the claims did not arise out of or in connection with Related Professional Services, focusing on distinctions between the employment discrimination and WC claims. But those distinctions do not negate the fact that the provided Professional Services were connected by common facts and circumstances,

---

[61] *ALPS Prop. & Cas. Ins. Co. v. Bowles Rice, LLP*, 2018 WL 3639832, at *11 (N.D.W.V. 2018) ("for two things to be causally connected, one must bring about the other.") (citation omitted).

[62] *Aff. of V. Sharon Edenfield* [Doc. 85-2], ¶ 6.

[63] *Bowles Rice, LLP*, 2018 WL 3639832, at *11 (citation omitted).

e.g., Phillips's employment relationship with David Emmanuel Academy and the insureds' representation of Philips with respect to her employment claims.

Defendants argue that the Wrongful Acts upon which Phillips bases her claims were not connected temporally, logically, or causally. But the "Multiple Claims" provision does not require that the Wrongful Acts themselves be related or connected, just that the claims arise out of or in connection with related **Professional Services**."[64] And the Wrongful Acts were connected, as they arose from the Professional Services provided to Phillips for her employment claims.

Defendants rely on *Lexington Insurance Co. v. Lexington Health Care Group Inc.*, 84 A.3d 1167, 1177 (Conn. 2014), in which the court stated that "multiple acts of negligence by an Insured usually are held to be unrelated when, although connected by some aspect, they have caused distinctly different damages." That case is inapposite, as it construed a different policy form with different language pertaining to "related medical incidents," addressed whether "acts of negligence" were related (as opposed to Professional Services), and did not address claims arising out of or in connection with Related Professional Services.[65]

---

[64] *See* § 4(D) [Docs. 44-9/44-11, p. 40; Doc. 44-13, p. 38; Doc. 44-15, p. 29].

[65] *Lexington Ins. Co. v. Lexington Health Care Group, Inc.*, 84 A.3d 1167, 1172, 1177 (Conn. 2014). *See also American Cas. Co. of Reading v. Belcher*, 2017 WL 372094, * 7 n.11 (S.D. Fla. 2017) (stating that express definitions and policy distinguished that case from the *Lexington* case), *aff'd,* 709 F. App'x 606 (11th Cir. 2017).

<u>CONCLUSION</u>

For the foregoing reasons, and those shown in ALPS's initial brief, the Court should grant ALPS's motion for summary judgment.

Respectfully submitted, this 17th day of December, 2022.

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia  30338-2680
Tel:  (770) 391-9100
Fax: (770) 668-0878
kjackson@boviskyle.com

/s/ Kim M. Jackson
Ga. State Bar No. 387420

*Counsel for Plaintiff ALPS Property & Casualty Insurance Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing *Plaintiff's Reply Brief in Support of Its Motion for Summary Judgment* was this day filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

This 17th day of January, 2022.

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia 30338-2668
Tel:  (770) 391-9100
Fax: (770) 668-0878

/s/ Kim M. Jackson
Ga. State Bar No. 387420
kjackson@boviskyle.com

*Counsel for Plaintiff ALPS Property & Casualty Insurance Company*