IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ALPS PROPERTY & CASUALTY        *
INSURANCE COMPANY,              *
                                *
        Plaintiff,              *
                                *
        v.                      *        CV 621-008
                                *
SHARON EDENFIELD, et al.,       *
                                *
        Defendants.             *

---

**O R D E R**

---

Before the Court is Plaintiff's motion for summary judgment. (Doc. 79.)  Plaintiff, an insurance company, seeks a declaratory judgment that it has no duty to defend Defendants Sharon Edenfield ("Ms. Edenfield"), Edenfield Law (together, the "Edenfield Defendants"), and Edenfield & Cox, P.C. ("ECB"),[1] from two malpractice claims in an underlying state court lawsuit.  (Doc. 44, at 1-2, 29-33.)  As explained below, Plaintiff's motion is **GRANTED IN PART and DENIED IN PART.**

---

[1] Throughout this Order, the Court will refer to Defendants Edenfield, Edenfield Law, and ECB collectively as "Defendants."  The Court will refer to Defendant Allison Phillips as "Ms. Phillips," and when the Court refers to "Defendants," that term does not include Ms. Phillips, even though Ms. Phillips is a Defendant in this action.

## I. BACKGROUND

### A. Factual Background

The underlying facts of this case are largely undisputed. Ms. Phillips is an African American female who, from 2007-2016, was employed by David Emanuel Academy ("DEA"), a private school in Stillmore, Georgia. (Doc. 79-7, at 1.) In March 2016, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination based on inequalities in pay between her and her Caucasian colleagues. (Id. at 2.) That same month, she allegedly suffered a workplace injury at DEA while attempting to break up a fight between students. (Id.) Then, in May 2016, she learned her employment contract would not be renewed and filed a second Charge of Discrimination with the EEOC – this time alleging retaliation. (Id.) She was ultimately terminated. (Id. at 3.)

On August 24 and August 25, 2016, Ms. Phillips received Right to Sue letters related to her two earlier Charges, giving her ninety days, respectively, to sue DEA on those Charges. (Id.) Ms. Phillips contacted Gerald Edenfield, an equity partner of Defendant ECB, for representation, and Mr. Edenfield referred Ms. Phillips to his daughter, Ms. Edenfield.[2] (Id. at 3-4.) On September 1, 2016, Ms. Phillips signed a Representation Agreement

---

[2] Ms. Edenfield was an employee of ECB from February 1, 2007 through April 26, 2019. (Doc. 79-4, at 4.)

wherein she retained ECB - specifically, Ms. Edenfield - "to represent her in connection with her claims against [DEA], Emeriel Hubbard, and/or any other person . . . for monetary damages to which she may be entitled to for any and all unlawful actions taken against her and/or that occurred to her employment arising from and/or in the course of her employment with [DEA.]" (Doc. 44-5, at 1-4.)

Ms. Edenfield filed suit in this Court on the EEOC claims on November 30, 2016 - 96 and 97 days after Ms. Phillips received her Right to Sue letters, respectively. (Doc. 49-2.)  On December 3, 2016, Attorney Adam Appel, a lawyer representing DEA, emailed Ms. Edenfield "that the complaint was untimely and asked that it be dismissed 'to avoid [his] seeking sanctions under Rule 11.'" (Doc. 85-1, at 3.)  Ms. Edenfield responded that "she planned to amend the Complaint to assert other causes of action with longer statutes of limitations." (Doc. 79-7, at 5.)

While that suit was pending, Ms. Phillips "'asked [at a meeting with Ms. Edenfield on December 8, 2016] when she would have money from the employment discrimination claim,' and Ms. Edenfield 'asked her why she needed money so badly right then.'" (Id. (citing Doc. 78, at 46:13-47:10).)  Ms. Phillips responded she had been injured while working at DEA and needed to see a doctor. (Id.)  Ms. Phillips then retained Ms. Edenfield to represent her in a separate workers' compensation ("WC") action

3

against DEA. (Id.) This representation was governed by a separate fee agreement signed on December 8, 2016. (Doc. 49-1, at 2-3.)

Ms. Edenfield never amended the Complaint because after completing her investigation into the facts of the case, she decided she did not have a good faith basis to assert any new claims. (Doc. 79-7, at 6; Doc. 85-1, at 4.) She asserts "the decision was made to discontinue pursuit of the discrimination suit in favor of the WC claim." (Doc. 85-1, at 4.) On October 31, 2017, this Court dismissed Ms. Phillips' EEOC claim with prejudice because it was filed outside the statute of limitations. (Doc. 79-7, at 6; 6:16-cv-162, SDGa, Doc. 16.)

On April 26, 2019, Ms. Edenfield left Defendant ECB to start her own firm, Defendant Edenfield Law, which opened on April 29, 2019. (Doc. 79-7, at 7.) Then, on May 30, 2019, Ms. Edenfield represented Ms. Phillips at a hearing before an Administrative Law Judge for Ms. Phillips' WC action. (Id.) Less than two months later, the Administrative Law Judge denied Ms. Phillips' claim for WC benefits. (Id.) Nearly eleven months after that, new counsel for Ms. Phillips sent Ms. Edenfield a letter "demanding her professional liability insurance information and expressing serious concerns that have been raised concerning Edenfield Law's representation of [Ms. Phillips] in the EEOC lawsuit." (Id. (alterations adopted)). Ms. Phillips sent a similar letter to Defendant ECB and sent a demand letter to Plaintiff, as the

4

professional liability carrier of Defendants Edenfield Law and
ECB. (Id. at 7-8.)   Plaintiff thereafter issued reservation of
rights letters (and later, supplements) to those Defendants,
reserving the right to seek recovery from the insureds for amounts
paid in defense of non-covered aspects of Ms. Phillips' claims.
(Id. at 8.)

Ms. Phillips ultimately sued the other Defendants in the State
Court of Bulloch County, Georgia (the "Underlying Lawsuit") on
February 22, 2021, alleging legal malpractice, breach of fiduciary
duty, breach of contract, negligent misrepresentation, and more
regarding her EEOC and WC claims.   (Doc. 44-23, at 16-23.)
Defendants accepted Plaintiff's defense without objection and
never objected to Plaintiff's reservation of rights.   (Doc. 79-7,
at 9.)   Now, Plaintiff seeks a declaratory judgment that it is not
obligated, under the terms of the insurance policies, to defend
Defendants in the Underlying Lawsuit.   (Doc. 79; Doc. 79-1, at 16-
23.)   It also seeks reimbursement of the funds it has already
expended in defense of Defendants.   (Doc. 79-1, at 22-23.)

**B. The Policies**

Particularly relevant in this case are numerous insurance
policies and applications for the same.   Plaintiff issued four
separate policies (together, the "ALPS Policies") – two each to
Ms. Edenfield (on behalf of Defendant Edenfield Law) and Defendant
ECB – two in 2019 two in and 2020.   (Doc. 79-7, at 9-19.)   For the

5

purposes of Plaintiff's motion, the ALPS Policies are substantially similar. (Id.)   The ALPS Policies issued to Ms. Edenfield can be found at Docs. 44-13 and 44-15; the ALPS Policies issued to Defendant ECB can be found at Docs. 44-9 and 44-11.   To secure these policies, Defendants completed "Applications." (Doc. 79-7, at 9-14.)   Ms. Edenfield's Applications can be found at Docs. 44-14 and 44-16; Defendant ECB's Applications can be found at Docs. 44-10 and 44-12.   Also important in this case are insurance policies (Lloyd's Policies") issued to Defendant ECB by Underwriters of Lloyd's, London, ("Lloyds") beginning in July 2016 and renewed through 2019.   (Doc. 79-1, at 7-9.)   The Lloyd's Policies can be found at Docs. 77-2, 77-3, and 77-4.   The relevant sections of these documents will be laid out below as the Court addresses the Parties' arguments.[3]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Facts are "material" if they could affect the outcome of the suit under the governing substantive law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   The Court must view the facts in the light

---

[3] When referring to all of the insurance policies – those from Plaintiff and Lloyds – together, the Court will refer to them as the "Policies."

most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex, 477 U.S. 317). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory

statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Id. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citation omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

The Local Rules require the movant to include a statement of undisputed material facts with its motion.  See L.R. 56.1, SDGa. "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007).  Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)).  Accordingly, the Court will only review the materials the Parties have specifically cited and legal arguments they have expressly advanced.  See id.

In this action, the Clerk of Court provided all parties notice of the motions for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 80.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. DISCUSSION

**A. Plaintiff is Not Required to Defend Defendants Edenfield and Edenfield Law Regarding the EEOC Claim**

Plaintiff makes four arguments why the Policies exclude coverage as it relates to the EEOC claim. (Doc. 79-1, at 2-3.) First, Plaintiff argues the Policies exclude coverage where Defendants "knew or reasonably should have known or foreseen that the Wrongful Act [in this case, failure to satisfy the statute of limitations] might be the basis of a Claim" and "[n]otice of the Claim or Wrongful Act was not given" either to Plaintiff or to Lloyd's, even though the Policies required such notice. (Id. at 2.) Second, it argues "Ms. Edenfield knew about her failure to satisfy the statute of limitations as early as 2016, yet [Plaintiff] received no notice until 2020[,]" in spite of the ALPS Policies' notice provision, which provided the insured must have immediately given notice to Plaintiff when she became aware of the claim. (Id. at 3.) Third, it argues the Policies exclude coverage where – as here, in the case of the Lloyd's Policies – "an earlier professional liability policy would have provided coverage if the Insured had complied with its obligations under that policy." (Id. at 2.) Fourth, it argues "the [ALPS] Policies exclude[] coverage, if, prior to the effective date, any insured was required to report a potential claim to another insurer[,]" which Plaintiff alleges was the case regarding the Lloyd's Policies. (Id.)

1.  <u>The Edenfield Defendants Were Required to Give Notice of
    the Wrongful Act</u>

First, Plaintiff argues the Edenfield Defendants' "failure to
satisfy the statute of limitations was a Wrongful Act . . . known
to Ms. Edenfield by December 3, 2016, when [DEA]'s counsel
threatened to file a Rule 11 sanctions motion against her." (<u>Id.</u>
at 16.)   Plaintiff argues that in spite of this knowledge, the
Edenfield Defendants failed to inform it (or Lloyd's) of the
Wrongful Act (or, in the Lloyd's Policies, "Incident"). (<u>Id.</u> at
17.)   Since providing this notice is a prerequisite to coverage,
Plaintiff argues it has no duty to defend the lawsuits here. (<u>Id.</u>)

Ms. Edenfield completed her first ALPS Application on April
25, 2019. (Doc. 79-1, at 9.)   The Application asked,

> Are you or any employee of the Firm aware of
> or have knowledge of any fact, circumstance,
> act, error, or omission that could reasonably
> be expected to be the basis of a claim against
> any current or former Attorney in the Firm or
> any Predecessor Firms, regardless of the merit
> of such claim?
>
> *If yes, complete a Claim Information
> Supplement for each potential fact,
> circumstance, act, error, or omission and
> provide a five (5) year loss run report.
>
> IT IS AGREED THAT ANY CLAIM ARISING FROM OR IN
> CONNECTION WITH ANY CLAIM, SUIT, FACT, EVENT,
> CIRCUMSTANCE, ACT, ERROR OR OMISSION DISCLOSED
> OR THAT SHOULD HAVE BEEN DISCLOSED IN RESPONSE
> TO THE CLAIM HISTORY SECTION OF THIS
> APPLICATION WILL BE EXCLUDED FROM COVERAGE
> UNDER THE POLICY.

(Doc. 78-7, at 3.)    Ms. Edenfield did not complete a Claim Information Supplement informing ALPS of the EEOC claim.   (Doc. 79-7, at 12-13; Doc. 85-1, at 6.)   Her second Application asked the same question, and she again failed to complete a Claim Information Supplement informing ALPS of the potential claim. (Doc. 79-7, at 13; Doc 85-1, at 7.)    The Applications were incorporated into the Policies:

> K. Statements in Declarations and Application
>     By acceptance of this Policy, each Insured agrees with, represents to and assures the Company that the statements, information and representations in the Declarations, in the application for this Policy, and in the applications for each prior policy issued by the Company to the Insured, are true and correct, that the Declarations and the application form a part of this Policy, and that this Policy is issued in reliance upon the truth of such statements, information and representations.
>
> L. Entire Contract
>     This Policy, including any signed endorsements attaching hereto, and including any current or previously submitted application documents which are incorporated herein by reference, embodies all agreements existing between the Insured and the Company relating to this insurance.

(Doc. 44-9, at 49; Doc. 44-11, at 49; Doc. 44-13, at 47; Doc. 44-15, at 38.)   The Policies describe themselves as "claims made and reported" policies and provide,

> This is a "<u>CLAIMS MADE AND REPORTED</u>" insurance Policy. Therefore, as a condition precedent to the Company's obligation to defend or indemnify the Insured under this Policy, the

Insured must immediately report any Claim to the Company during the Policy Period or during any applicable Extended Reporting Period. No coverage exists under this Policy for a Claim which is first made against the Insured or first reported to the Company before or after the Policy Period or any applicable Extended Reporting Period. If the Insured receives notice of a Claim, or becomes aware of a Wrongful Act that could reasonably be expected to be the basis of a Claim, then the Insured must, as a condition precedent to the Company's obligation to defend or indemnify any Insured, immediately deliver a written notice directly to the Company.

(Doc. 44-9, at 29; Doc. 44-11, at 29; Doc. 44-13, at 27; Doc. 44-15, at 18.)   The Policies also limit coverage where a "Wrongful Act" is not timely reported:

SECTION 1 – INSURING AGREEMENTS

A. COVERAGE Subject to the Limit of Liability, exclusions, conditions and other terms of this Policy, the Company agrees to pay on behalf of the Insured all sums (in excess of the Deductible amount) that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied: . . .

2. At the Effective Date of this Policy, no Insured knew or reasonably should have known or foreseen that the Wrongful Act might be the basis of a Claim;

3. Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date . . .

13

(Doc. 44-9, at 30; Doc. 44-11, at 30; Doc. 44-13, at 28; Doc. 44-15, at 19.)   Finally, under the Policies' terms, a "Claim" is defined as "a demand for money or services including, but not necessarily limited to, the service of suit or institution of arbitration or alternative dispute resolution proceedings against the Insured[,]" and a "Wrongful Act" is defined as an "[a]ct, error or omission in Professional Services that were or should have been rendered by the Insured." (Doc. 44-9, at 32, 37; Doc. 44-11, at 32, 37; Doc. 44-13, at 30, 35; Doc. 44-15, at 21, 26.)

The Parties do not dispute the relevant facts here: the Edenfield Defendants admit "Ms. Edenfield did not disclose any information regarding the dismissal of the EEOC Lawsuit or Ms. Phillips's claims. . . . [although] she did disclose an unrelated matter that she was aware of at that time." (Doc. 85-1, at 6.) They also admit she failed to disclose Ms. Phillips' potential claims when she renewed the ALPS Policy in 2020. (Doc. 79-7, at 13; Doc. 85-1, at 7.) The Parties do not dispute that Plaintiff only received notice of the suit from Ms. Phillips, who sent Plaintiff a demand letter on September 9, 2020. (Doc. 79-7, at 8; Doc. 85-1, at 5.) Instead, the Edenfield Defendants dispute Plaintiff's motion only on legal grounds, arguing Ms. Edenfield gave timely notice to Plaintiff. (Doc. 85, at 7.) Essentially, the Edenfield Defendants argue (1) no claim was made prior to 2020 and (2) there is a triable issue "as to whether Ms. Edenfield had

committed a 'Wrongful Act' or 'Incident' that should have been reported to ALPS at any time prior to 2020." (Id. at 10-12.) In making their second point, the Edenfield Defendants argue "the question of whether an insured could have reasonably anticipated a claim is for the jury" and she "had no basis to believe that she and/or the firm might be sued for legal malpractice when DEA moved to dismiss the EEOC lawsuit in April 2017, or when the Court's order of dismissal was entered in October 2017." (Id. at 12, 14.) And while there is no dispute on the Edenfield Defendants' first argument – no claim was made prior to 2020 – the Parties dispute whether "claims against [the Edenfield Defendants] arose from pre-policy facts and circumstances that could reasonably be expected to be the basis of a claim, [and whether] coverage is excluded." (Doc. 90, at 3.) The Court will now address that question.

In Georgia, insurance "is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996) (citation omitted). An insurance company is permitted to "fix the terms of its policies as it sees fit, so long as they are not contrary to the law," and is "free to insure against certain risks while excluding others." Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016) (citations omitted). Where contractual language is specific and unambiguous, "the court's job is simply to apply the terms of the contract as written, regardless

of whether doing so benefits the carrier or the insured." Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008). "However, when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous and, pursuant to O.C.G.A. § 13-2-2(5), will be construed strictly against the insurer/drafter and in favor of the insured." Smith, 784 S.E.2d at 424-25 (citing Hurst, 470 S.E.2d at 663). "[E]xclusions in an insurance policy are to be interpreted narrowly, in favor of the insured, 'on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms.'" Rentrite, Inc. v. Sentry Select Ins. Co., 667 S.E.2d 888, 892 (Ga. Ct. App. 2008) (citation omitted). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. 2012) (quoting BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 685 (2007)).

Here, the ALPS Applications (which were incorporated into the ALPS Policies) unambiguously provide Ms. Edenfield was required to "complete a Claim Information Supplement for each potential fact, circumstance, act, error, or omission" "that could reasonably be expected to be the basis of a claim against any current or former Attorney in the Firm or any Predecessor Firms, regardless of the

16

merit of such claim." (See, e.g., Doc. 78-7, at 3.)  Such Wrongful Acts were excluded from coverage if the "Insured knew or reasonably should have known or foreseen . . . [they] might be the basis of a Claim." (See, e.g., Doc. 44-13, at 28.)  Thus, the Court must determine whether Ms. Edenfield "knew or reasonably should have known or foreseen that the [alleged] Wrongful Act might be the basis of a Claim." (Id.)

"[T]he issue of satisfactory compliance with the notice requirement of an insurance policy is generally a question of fact to be resolved by the jury and not susceptible to being summarily adjudicated as a matter of law." First of Ga. Underwriters Co. v. Beck, 316 S.E.2d 519, 522 (Ga. Ct. App. 1984). "However, it does not follow that such an issue never can be resolved by the court as a matter of law." Equitable Life Assur. Soc. of U.S. v. Studenic, 77 F.3d 412, 415-16 (11th Cir. 1996) (quoting Bates v. Holyoke Mut. Ins. Co. in Salem, 324 S.E.2d 474, 474-75 (Ga. 1985)). "Whether or not the [notice] condition has been met is not always a jury question because an unexcused significant delay may be unreasonable as a matter of law." Townsend v. Nat'l Union Fire Ins. Co., 397 S.E.2d 61, 62 (Ga. Ct. App. 1990) (citations omitted).

Here, the Court finds Ms. Edenfield reasonably should have known that her error – failure to comply with a statute of limitations – constituted a Wrongful Act under the ALPS Policies

17

and could have formed the basis of a Claim.  Missing a statute of limitations is a "clear and palpable case[]" of unacceptable professional conduct in a legal malpractice action.  See Berman v. Rubin, 227 S.E.2d 802, 806 (Ga. Ct. App. 1976).  The Edenfield Defendants undisputedly had notice of this error, if not by December 3, 2016 (when Attorney Appel emailed her arguing the EEOC suit was clearly time-barred), then at the latest by October 31, 2017, when the Court dismissed Ms. Phillips' suit with prejudice for failure to file the suit within the limitations period.  (Doc. 79-7, at 6; Doc. 85-1, at 4.)  As a result, there is no genuine dispute of material fact that Ms. Edenfield was required to complete a Claim Information Supplement informing Plaintiff of the error, and her failure to do so means the resulting claim is excluded from coverage.

The Edenfield Defendants disagree, but their counterarguments are unavailing.  While cases of reasonableness are generally for the jury, no reasonable attorney would have failed to see that missing a statute of limitations may have given rise to a claim for legal malpractice.[4]  And while they argue Ms. Edenfield "investigated amending the complaint with a variety of different

---

[4] Plaintiff cites several cases from other jurisdictions in support of this proposition, and the Court finds their reasoning persuasive.  See, e.g., ALPS Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP, 526 F. Supp. 3d 805, 815 (D. Nev. 2021) (holding that "missing a statute of limitations deadline would put a reasonable attorney on notice of a potential malpractice claim" and "a statute of limitations . . . mistake fatal to a client's case puts a reasonable lawyer on notice they may face a malpractice claim").

[f]ederal and [s]tate law claims that could be timely asserted[,] [s]he ultimately determined that there did not exist evidence to support a theory of employment discrimination and, after talking to Ms. Phillips about it, decided against amending the complaint." (Doc. 85, at 14.)  As a result, her client's claims failed as a matter of law.  Even if she *had* amended the complaint, there is no indication the Edenfield Defendants would have been able to revive their client's time-barred claim; they simply argue they would have asserted "other causes of action."  (Doc. 99, at 3.)  And although the Edenfield Defendants are correct that in Home Indem. Co. Manchester v. Toombs, 910 F. Supp. 1569, coverage was barred partly because the defendant attorney admitted he was aware of his error and failed to report it, such an admission is not necessary for the Court to find the Edenfield Defendants had notice of the potential claim here.  910 F. Supp. at 1580-81.  Rather, the evidence must only establish the Edenfield Defendants had a reasonable basis to believe they could be sued as a result of mishandling the EEOC claim.  Id. at 1581.  The evidence unequivocally does so here.  Plaintiff's motion is therefore **GRANTED** to the extent it seeks a declaration that it is not required to defend the Edenfield Defendants' underlying malpractice action as it relates to the EEOC Claims.

19

2. <u>Defendant ECB Was Required to Give Notice of Wrongful Act</u>

Second, Plaintiff argues ECB is not entitled to coverage for three reasons. (Doc. 79-1, at 19.) First, it argues "coverage is only afforded if 'notice of the Wrongful Act was not required to be given to any other insurer prior to the [Policy's] Effective Date[,]'" which it argues the Lloyd's Policies *did* require here. (<u>Id.</u> at 20 (quoting Doc. 44-13, at 30 (alterations adopted)).) Second, it argues the Lloyd's Policies would have afforded coverage had Defendants reported the Incident to Lloyd's, so ALPS Policy Section 3(E)(2)'s exclusion applies. (<u>Id.</u>) Third, it argues Defendant ECB should have given Lloyd's notice of the Wrongful Act because it may have given rise to a Claim. (<u>Id.</u>)

The ALPS Policies provide,

> [T]he Company agrees to pay on behalf of the Insured all sums . . . that the Insured becomes legally obligated to pay as Damages, arising from or in connection with A CLAIM FIRST MADE AGAINST THE INSURED AND FIRST REPORTED TO THE COMPANY DURING THE POLICY PERIOD, provided that all of the following conditions are satisfied: . . .
>
> 3. Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date[.]

(Doc. 44-9, at 30.) As a result, the Court must determine whether "[n]otice of the Claim or the Wrongful Act" was "required to be given to any other insurer prior to the Effective Date" of the ALPS Policies. (<u>Id.</u>) The Parties agree that the Lloyd's Policies

covered Defendant ECB from July 2016 until July 2019.  (Doc. 79-7, at 9.)  The Lloyd's Policies provide,

> Reported Incidents: Underwriters will cover Claims made against an Insured after this Insurance Policy ends, if:
>
> a. During this Policy Period, the Insured involved first becomes aware that an Incident covered by this Insurance Policy occurred and a Claim might be made; and
>
> b. The Incident is reported in writing to Underwriters while this Insurance Policy is in effect.

(Doc. 77-2, at 6-7.)  The Lloyd's Policies define "Incident" as "any circumstance, act, error or omission which an Insured could reasonably expect to be the basis of a Claim or Suit covered by this Insurance Policy." (Id. at 11.)  Lastly, the Lloyd's Policies define an "Insured" as:

> The Named Insured identified in the Declarations, and: . . .
>
> 3. Any lawyer who was a partner, officer, director, stockholder or employee of or "of counsel" to the Named Insured or Predecessor Firm at the time the acts, errors or omissions on which liability is asserted occurred but only with respect to acts, errors or omissions in Professional Services in the law practice of the Named Insured or Predecessor Firm as a partner, officer, director, stockholder or employee of or "of counsel" to the Named Insured or Predecessor Firm.
>
> No coverage is provided under this Insurance Policy for any partner, officer, director, stockholder, employee or "of counsel" for acts, errors or omissions occurring before joining the Named Insured, unless coverage for

> prior Incidents is purchased and the
> appropriate Retroactive Date is shown.
>
> The Named Insured will be deemed the agent of
> all Insureds in regard to all matters relating
> to this Insurance Policy.

(Id. at 8.)   The plain and unambiguous terms of the Lloyd's Policies accordingly provide that Lloyd's would have covered Defendant ECB for the EEOC claim if an Insured had reported the Incident to Lloyd's in writing while the Lloyd's Policies were still in effect.   (Id. at 7.)   And for the same reasons described above, Defendants – including Ms. Edenfield, who was an Insured under ECB's Lloyd's Policies - could have "reasonably expect[ed]" the missed statute of limitations "to be the basis of a Claim or Suit covered by [the Lloyd's Policies]."   (Id. at 11.)   Defendant ECB and its agents and employees undisputedly failed to do so, and the ALPS Policies provide such failure bars coverage.   (Doc. 44-9, at 30 (providing coverage if "Notice of the Claim or the Wrongful Act was not given nor required to be given to any other insurer prior to the Effective Date").)   Accordingly, Defendant ECB is not entitled to coverage on the malpractice claim as it relates to the EEOC claim.

Defendant ECB makes several counterarguments, all of which fail.   Defendant ECB argues it "is entitled to coverage because it fully complied with its obligations under its coverage with ALPS and promptly provided notice to ALPS as soon as it first became

22

aware of a potential claim[.]" (Doc. 83, at 1.) It also argues (like Ms. Edenfield) that "[t]riable issues of material fact exist as to whether [Ms.] Edenfield committed a wrongful act or incident while employed by [ECB]." (Id.) For the reasons stated above, the Court rejects Defendant ECB's second argument; Ms. Edenfield *did* commit a Wrongful Act as defined by the Policy during her employment at Defendant ECB. Further, as discussed above, Defendant ECB did not fully comply with its obligations under the ALPS Policies because it did not report the Incident to Lloyd's at the time it occurred.

Defendant ECB also argues Ms. Edenfield "[w]as [n]ot an Insured [u]nder the [ALPS Policy]." (Id. at 7.) It argues the ALPS Policies did not require it to report the acts of omissions of its attorneys, who were the Insureds under the ALPS Policies at the time the Claim was ultimately filed. (Id. at 7-10.) However, as Plaintiff points out, even if Defendant ECB is correct, a different result is not required. (Doc. 90, at 12.) Whether Ms. Edenfield was an Insured under the terms of the ALPS Policies at the time those Policies were entered into does not change that Ms. Edenfield was undisputedly an Insured under the Lloyd's Policies as an employee of Defendant ECB while those Policies were in effect.[5] Those Policies would have covered ECB (and Ms. Edenfield)

---

[5] As noted above, the Policies also provide "the Named Insured will be deemed the agent of all Insureds in regard to all matters relating to this Insurance Policy." (Doc. 77-2, at 8.)

had Ms. Edenfield reported the Incident - as required - to Lloyd's. However, there is no dispute she failed to do so.  As a result, the ALPS Policies bar coverage for both her and Defendant ECB.[6] Summary judgment for Plaintiff is **GRANTED** as it relates to its obligation to defend Defendant ECB in the malpractice suit as it relates to the underlying EEOC claim.

## B. Plaintiff is Required to Defend the Workers' Compensation Claim

Next, the Parties disagree about whether Plaintiff is required to defend the malpractice action as it relates to the WC Claim.  Plaintiff argues it is not required to defend the WC claim because the WC Claim and the EEOC Claim are "Related Claims" under the Policies' terms, "connected by a host of common facts, circumstances, situations, transactions, and events." (Doc. 79-1, at 21-22.)  Defendants disagree.  (Doc. 85, at 16-22; Doc. 83, at 18-22; Doc. 84, at 9-10.)  The ALPS Policies provide,

> Neither the making of one or more Claims
> against more than one Insured, nor the making
> of Claims by more than one claimant, shall

---

[6] Defendant ECB points to a Supreme Court of New York case for the proposition that "a former employee's knowledge of his or her own error or omission will not vitiate insurance coverage for the firm who subsequently obtains coverage based on truthful responses to the insurer's application." (Doc. 83, at 12 n.17 (citing Holloway v. Sacks & Sacks, 275 A.D.2d 625 (N.Y. App. Div. 2000)).) However, this out-of-jurisdiction case is distinguishable because there, the attorney *concealed his misconduct.* Holloway, 275 A.D.2d at 626.  There is no evidence Ms. Edenfield concealed her alleged misconduct here; rather, as Plaintiff points out, at least one other attorney of Defendant ECB received notice of filings in Ms. Phillips' case.  (Doc. 90, at 14 (citing Doc. 77-12).) Further, the representation agreements note Ms. Phillips "does hereby retain and employ the law Firm of EDENFIELD, COX, BRUCE & CLASSENS, Attorneys at Law, hereinafter referred to as 'The Firm,' as her attorneys to represent her in connection with her claims against [DEA.]" (Doc. 44-5, at 1.)  Ms. Edenfield filed the suit under ECB's name and listed EBC as Plaintiff's attorney.  (Doc. 49-2, at 16-17.)

> operate to increase the Limit of Liability. All Claims that arise out of or in connection with the same Professional Services or Related Professional Services, whenever made and without regard to the number of Claims, claimants, or implicated Insureds, shall be treated as a single Claim.[7]

(Doc. 44-9, at 40.)   The Policies define "Related Professional Services" as,

> Professional Services that are connected temporally, logically or causally, by any common fact, circumstance, situation, transaction, event, advice or decision including, but not necessarily limited to, work that is part of the same or continuing Professional Services.

(Id. at 37.)   Plaintiff and Defendants all point to a Northern District of West Virginia case to define these terms:

> In common usage, "temporally connected" means connected to a particular time or through the sequence of time. In other words, for two things to be temporally connected, they must either occur at the same time or one must follow the other sequentially, that is, in a continuous or connected series.

> In common usage, "logically connected" means connected by an inevitable or predictable interrelation or sequence of events. Therefore, for two things to be logically connected, one must attend or flow from the other in an inevitable or predictable way.

> In common usage, "causally connected" means connected where one person or things brings about the other. Therefore, for two things to

---

[7] The Parties disagree about whether this provision, in context, limits coverage. The Court need not address these arguments because even assuming *arguendo* the provision was intended to limit coverage, the claims here are not "Related Professional Services" as defined by the provision. Thus, Plaintiff is required to defend the WC claim even if the provision limits coverage.

> be causally connected, one must bring about
> the other. Moreover, the common understanding
> of causation requires more than a "but-for"
> relationship between two things.

ALPS Prop. & Cas. Ins. Co. v. Bowles Rice, LLP, No. 1:18cv29, 2018
WL 3639832, at *11 (N.D.W.V. July 31, 2018) (citations omitted).

Here, the EEOC Claim and WC Claim here are not connected
temporally, logically, or causally.  First, the claims are not
connected temporally.  Although the EEOC Claim and the initial
injury giving rise to the WC claim occurred in March 2016, Ms.
Phillips filed a second Charge of Discrimination in May "after
learning that her employment contract would not be renewed, . . .
alleging retaliation."   (Doc. 79-7, at 2.)   That Claim was also
part of Ms. Phillips' EEOC suit.   (Id.)   That the EEOC Claim and
injury giving rise to the WC Claim occurred in the same calendar
month neither means the two claims occurred "at the same time" or
in a "continuous or connected series," especially when the suits
arising from the Claims were brought years apart.  Relatedly, the
events were not logically connected– that is, attending or flowing
from the other in an inevitable or predictable way – or causally
connected.  The EEOC Claim was related to pay disparities, not
physical injuries, and the WC Claim was related only to a physical
injury that occurred as the result of a student altercation at the
school.  (Doc. 79-7, at 2-3.)  Plaintiff also does not allege Ms.
Phillips' EEOC Claim caused the injury giving rise to her WC Claim,

and the presence (or absence) of the WC Claim had no bearing on the EEOC Claim; rather, the two claims happened to co-exist independently, albeit within the same attorney-client relationship. The Court finds the two claims were independent injuries raised in independent suits, and therefore finds they are not derived from related professional services.

Plaintiff argues the Claims were connected because they were both brought by Ms. Phillips, were both asserted against DEA, and "arose from the common fact and circumstance of Ms. Phillips' employment relationship with [DEA]." (Doc. 79-1, at 22.) It argues that because Ms. Edenfield learned of the WC Claim during a consultation regarding the EEOC Claim, because Ms. Phillips "was concerned about receiving payment in the EEOC [l]awsuit quickly to pay for the medical treatment required by her workplace injury[,]" and because Ms. Edenfield represented Ms. Phillips in both claims simultaneously, the claims must be treated as a single claim. (Id.) The Court disagrees. Any number of unrelated claims may arise from a single employer/employee, or attorney/client relationship. Those relationships can potentially encompass a large variety of duties and potential injuries that lack any logical, temporal, or causal connection. Further, as Ms. Edenfield points out, the Claims "were subject to separate representation agreements that were entered into months apart" and "[t]he alleged negligence in the [EEOC] case had already taken place when [Ms.]

27

Edenfield first learned of the WC [C]laim." (Doc. 85, at 20.) Plaintiff's proposed interpretation of "Related Claims" simply proves too much: under its interpretation, any number of unrelated claims could be excluded from coverage by the mere fact that a party re-employed the same attorney.

The Court declines Plaintiff's invitation to consider the two independent claims as "Related Professional Services," and accordingly **DENIES** Plaintiff's motion for summary judgment on that ground.

## C. Plaintiff is Not Entitled to Reimbursement

Lastly, Plaintiff seeks reimbursement as permitted by the ALPS Policies "for any amount paid by [ALPS] in defending any . . . non-covered Claim." (Doc. 79-1, at 22 (citing Doc. 44-9, at 30).) Plaintiff asserts it has paid $38,607.67 in defending the Edenfield Defendants and $33,781.79 in defending Defendant ECB. (<u>Id.</u> at 23.) The Court need not decide this issue at this time because Plaintiff has failed to itemize the amounts it expended defending each of the two separate claims. As explained above, Plaintiff is required to defend the WC Claim, so even if it is entitled to reimbursement on the EEOC Claim, it is not entitled to reimbursement for any expenses accrued in the WC action. As such, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion for reimbursement at this time because it does not have the necessary

information to reimburse Plaintiff for only the defense on which it may be entitled to reimbursement.

### IV. CONCLUSION

For the reasons explained above, Plaintiff's motion (Doc. 79) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff owes no duty to defend Defendants in the malpractice action as it relates to the underlying EEOC action.  Further, Plaintiff is obligated to defend Defendants in the malpractice action as it relates to the underlying WC action.  Plaintiff's motion for reimbursement is **DENIED WITHOUT PREJUDICE**.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff as it relates to the EEOC Claim and **ENTER JUDGMENT** in favor of Defendants as it relates to the WC Claim.  Plaintiff **MAY FILE** a renewed motion for reimbursement within 30 days of this Order, itemizing its expenses in defending the EEOC Claim.  If Plaintiff fails to file this renewed motion, the Court will direct the Clerk to close this case.

**ORDER ENTERED** at Augusta, Georgia, this 7th day of September, 2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA